## MOORE *v.* MCJUDKINS.

### Opinion delivered November 11, 1918.

JUDICIAL SALE—CONFIRMATION.—A sale by a commissioner in chancery was based upon an advertisement having a small circulation and not calculated to bring it to the attention of the public; although it was the custom for the commissioner to notify attorneys of interested parties, he failed to do so in this instance; the sale was for a grossly inadequate price. *Held* that it was error to confirm the sale.

Appeal from Conway Chancery Court; *Jordan Sellers,* Chancellor; reversed.

### STATEMENT OF FACTS.

The appellants and appellees owned, respectively, an undivided half interest in a certain lot in the city of Morrilton, Arkansas. In a decree for partition, the land was ordered to be sold. A commissioner was appointed to make the sale, and, after advertising the land in obedience to the decree, sold the same at public sale. The land was

bought in for the appellee by their agent, Jim Oliver, who bid for same the sum of $200. The commissioner reported the sale to the chancery court. The appellants filed exceptions to the report of the commissioner, alleging in substance that they knew nothing about the sale, or the notice thereof having been published, and had no opportunity to attend the sale or to bid on the land; that some of them lived in Memphis and others in Little Rock; that after the decree of partition had been entered they made arrangements with their attorney, W. P. Strait, to attend the sale, and authorized him to bid for appellants the sum of $600 for the land; that it was the custom in Morrilton for the commissioner in chancery to notify attorneys interested in the case of the time and place of sales to be made by him; that appellants' attorneys relied upon this custom, and although they were in town and in their office on the day of sale, the commissioner failed to call their attention to it; that the attorneys had not seen the advertisement or notice of sale and knew nothing about it; that by reason of these facts appellants were denied the opportunity to be present and to bid upon the land; that $200, the amount bid by the appellees' agent and for which the lot was sold to him, was an inadequate consideration; that appellants had made improvements on the lot and that the minimum value of same was the sum of $1,000. They offered to bid the sum of $600 and to pay such sum immediately into the registry of the court.

Witness Strait testified that he was the attorney for the appellants who had made arrangements with him to bid at the sale up to the price of $600 for the purpose of purchasing the land in their behalf. It had always been the custom in the town of Morrilton for the commissioner in chancery to notify the attorneys of interested parties in chancery sales of real property of the date of such sales so that they could be present. He had not seen the notice of the sale and did not know of the date of same, and the commissioner did not notify him of such date. He

afterwards heard of it and called the commissioner and asked him about it, and the commissioner explained that the reason he did not notify witness was that he had forgotten that witness represented the defendants. If witness had known of the sale, he would have been present and would have bid as high as $600 for the land, and he now offered the bid of $600. Witness' office was about a block from the court house. Witness was a subscriber to both "The Morrilton Democrat" and "The Morrilton Headlight," the oldest papers having general circulation in Morrilton and throughout Conway County, and had not seen the notice of sale in these. He relied on the custom of the commissioner to notify him of the day of sale.

Pete Knox, one of the appellants, testified that the appellants had put improvements on the land that cost $950. He, for himself and the other appellants, employed the firm of Strait & Strait, Attorneys, to represent them in the suit for partition. After the decree of partition was entered and before the sale, their attorney, Strait, agreed to attend the sale and bid for appellants. They authorized him to bid the sum of $600 and left the matter to him and relied upon him. The appellants offered to bid the sum of $600, and to pay that sum in cash in court. Witness knew that the land was going to be sold under the decree of the court, and relied and made arrangements with Mr. Strait to attend the sale. The lot is now worth $1,000.

It was shown that the notice of sale was not printed in "The Morrilton Democrat," nor in "The Morrilton Headlight," but that it was printed in "The Conway County Unit," a new paper which at the time was not extensively circulated in the town of Morrilton and was not delivered to its subscribers in Morrilton through the United States mail, but was delivered by special carriers. Attorney Strait was not a subscriber to that paper.

Jim Oliver, a witness introduced by the appellees, testified substantially as follows: He bought the lands for

the appellees, paying therefor the sum of $200. In addition to the $200 he bought the interest of one of the owners who was not a party to the partition suit, for which he paid $25. Witness was of the opinion that $200 was a fair value. Witness would not take $200 nor $600 for it. Witness "was not after selling it." Witness saw notice of the sale in the little paper called "The Unit" published in the town of Morrilton.

Another witness testified that he knew the property; that there were two houses on one lot, one with five rooms and the other with four rooms. Outside of some old lumber used, they had been built new since 1914. Witness thought $300 would be enough for the property.

Witness Massey testified that he was engaged in buying and selling real estate in the town of Morrilton and attended the sale in question. He bid on the property running the same up to $175 and dropped out. Considering the location of the property and its surroundings, for a white man it was a bargain at $200. The property was located in a section of the town composed almost entirely of negroes, and would only find a ready sale to negro purchasers. If witness owned the property, he would be tickled to sell it for $300. The court overruled the exceptions of appellants and refused to accept their cash bid for $600, and entered a decree confirming the sale from which is this appeal.

*W. P. Strait,* for appellants.

1. The price paid was grossly inadequate. 123 Ark. 523; 77 *Id.* 216.

2. The sale should be set aside for unavoidable casualty. 199 S. W. 112; 65 Ark. 152; *Hawkins* v. *Jones,* 131 Ark. 478.

*Calvin Sellers,* for appellees.

1. The price was not grossly inadequate. Mere inadequacy of price is not sufficient. 77 Ark. 216; 56 *Id.* 240; 44 *Id.* 502; 20 *Id.* 381; 117 U. S. 180; 108 Ala. 140; 61 Miss. 78; 77 Ark. 216; 123 *Id.* 523-6.

2. There was no unavoidable casualty. The appellants were simply negligent. The property brought a fair price, and no unfairness or undue advantage is shown.

WOOD, J., (after stating the facts). The undisputed evidence shows that two houses, practically new, were on the lot at the time of the sale which had cost $950; that the appellants were offering to pay cash the sum of $600. It is clear that the advertisement was not in the newspapers having the greatest circulation and best calculated to bring the notice to the attention of the public in the town of Morrilton. Only two parties were present, the purchaser and a real estate broker who offered to loan the money to the purchaser to pay for the property.

A decided preponderance of the evidence shows that the lot in controversy sold for a grossly inadequate price. The testimony tends to prove that it was the custom for the commissioner in chancery, in making sales of lands, to notify the attorneys of parties interested. The attorneys for the appellants relied upon the custom, and therefore were not present at the sale. If the custom had been followed in the instant case, they would have been present and would have bid for the property the sum of $600, which they were authorized to do by their clients who were not present and who had employed Strait & Strait to look after the matter for them and to see that the property brought at least $600.

While there was no actual fraud perpetrated by the appellees, and while, strictly speaking, there was no illegality in the sale, yet it is obvious that the property in controversy did not bring a fair price because of circumstances which created a condition in the nature of an unavoidable casualty that prevented the appellants or their attorneys from attending. The undisputed evidence discloses that the attorneys for appellants would have attended if they had been notified by the commissioner of the day of sale, which notice it was the custom of the commissioner to give and which the commissioner would have given on this occasion, had he not forgotten.

The price bid for appellees alone, perhaps, was not so grossly inadequate as to shock the conscience, yet the undisputed testimony shows that the price was grossly inadequate, and that the attorneys for appellant were misled and surprised greatly to the injury of their clients, by the conduct of the commissioner in failing to observe the custom which had been established of notifying the interested attorneys of the date when sales of real estate ordered by the chancery court were to take place.

The case comes within the rule announced by us in the recent case of *Hawkins* v. *Jones,* 131 Ark. 478, 481, where we said: "In the case of *Colonial & U. S. Mortgage Co.* v. *Sweet,* 65 Ark. 152, Judge BATTLE announced the rule which has been frequently followed that confirmation of a judicial sale should not be withheld where it appears that 'the property sold has brought its market value, and the purchaser and those conducting or controlling it have committed no fraud, unfairness or other wrongful act injurious to the sale, and there is no occurrence, or special circumstance, affording, as in other cases, a proper ground for equitable relief.' " We are of the opinion that the circumstances of this case bring it within the latter part of the rule stated by Judge Battle.

In *Stevenson* v. *Gault,* 131 Ark. 397-402, we approved the rule announced by the Supreme Court of the United States in *Graffam* v. *Burgess,* 117 U. S. 180, as follows: "If the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold."

Undoubtedly the facts of this record disclose that the appellants were misled and surprised by the conduct of the commissioner in not notifying their attorneys, as it had been his custom to do. The sale was not complete

until the same was confirmed by the chancery court. For the error in confirming the sale as reported, the decree will be reversed and the cause remanded with directions to refuse confirmation of the sale, and for such other and further proceedings as may be necessary and not inconsistent with this opinion.