Robert KEIRS v. MT. COMFORT ENTERPRISES, INC, S. E. PRINCE, Individually, and Eddie PRINCE, Individually

79-95                        587 S.W. 2d 8

Opinion delivered September 24, 1979
(Division II)

*Erwin L. Davis,* for appellant.

*John C. Everett,* of *Everett & Whitlock,* for appellees.

FRANK HOLT, Justice. Appellant, a minority stockholder, filed a complaint seeking involuntary liquidation of appellee Mt. Comfort Enterprises, Inc., pursuant to Ark. Stat. Ann. §§ 64-906 and 64-908. The corporation was adjudged insolvent, and an order entered authorizing the receiver to sell the corporate assets, including a fully equipped 220 acre poultry farm and numerous items of personal property, at public auction. The notice of the sale, published in a local newspaper, stated that any corporate assets upon which a lien existed would be sold separately and subject to all existing liens. It enumerated three outstanding mortgages which "will exceed" $440,000. Also the three mortgages were in default and subject to foreclosure at any time. All bidders were required to "qualify" by depositing bonds or letters of credit with the receiver prior to the sale.

The equity in the above described real property and various small items of personalty of an undetermined value were sold for the high bid of $4.00 to appellee S. E. Prince. Since the sale was subject to all three mortgages, totaling $446,410.39 and in default, this amount must of course, as observed by the chancellor, be considered as part of the actual sale price, which would be a total of $446,414.39. Appellant filed a petition seeking to set aside the sale on the grounds of inadequacy of purchase price, conspiracy and collusion between the successful bidder and many other persons to depress the sale price, suppress the bidding, and suppress the number of independent bidders. It is from the denial of the petition that appellant brings this appeal.

Appellant first contends that the court erred in failing to set aside the sale of the equity to appellee S. E. Prince in the

land and personal property belonging to appellee corporation. It is well established that the court is the vendor in judicial sales; the court is vested with sound judicial discretion and may confirm or refuse to confirm a sale in the exercise of this discretion. *Summars* v. *Wilson,* 205 Ark. 923, 171 S.W. 2d 944 (1943). There the court also held that "[j]udicial sales are not to be treated lightly," and "the appellate court, in reviewing the action of a trial court to see if there has been an abuse of discretion, does not substitute its own decision for that of the trial court, but merely reviews the case to see whether the decision was within the latitude of decisions which a judge or court could make in a case like the one being reviewed." To set aside the sale here, the burden is on the petitioner to establish that the property was sold for a grossly inadequate price, and that some slight additional circumstances, such as fraud, unfairness, or inequitable conduct existed. *Hinton* v. *Elliot,* 187 Ark. 907, 63 S.W. 2d 633 (1933); *Adams* v. *Spillyards,* 187 Ark. 641, 61 S.W. 2d 686 (1933); and *Stevenson* v. *Gault,* 131 Ark. 397, 199 S.W. 112 (1917).

A review of the evidence here indicates that the appellant failed to establish that the price was "grossly inadequate." Appellant's expert witness testified that one year before the sale he had appraised the farm as an on-going operation at $525,000. This figure, however, included some $20,000 worth of personalty which was sold separately at the sale. In addition, he agreed that the farm's value had diminished since it was no longer in operation. Also that property frequently brings less at judicial sales. Appellant testified, without stating any basis for his opinion, that the value of the farm as "a going turkey operation" was $600,000. At the judicial sale, the property actually sold, as indicated, for $446,414.39. Therefore, according to the figure of appellant's own expert witness, the public sale price represents 85.03% of the total value of the property. The sale price also represented 74.40% of the unsubstantiated estimated value stated by the appellant.

In cases where the courts have found a gross inadequacy in price, the difference in the alleged value of the property and the sale price was of a substantial magnitude. In *Stevenson* v. *Gault, supra,* a property worth $3,500.00 was sold for

$500.00 or 14% of the value. In *Mulkey* v. *White*, 219 Ark. 441, 242 S.W. 2d 836 (1951), a forty acre farm was sold for $975.00. In refusing to approve the sale, the court held that the price was greatly inadequate in that "offers of $100.00 or more an acre had been made in open court." Further, by analogy, as pointed out by the appellees, when real property is sold at public auction by a representative of the decedent, the law requires that such property be sold for not less than 75% of the appraised value. Ark. Stat. Ann. § 62-2717 (Repl. 1971). Here the property sold at a judicial sale for approximately 80% of its true value according to appellant's own evidence.

We hold that the appellant has not met his burden of proof that the public sale price of the property was grossly inadequate and that the chancellor, therefore, abused his discretion in refusing to set aside the sale. Consequently, it becomes unnecessary to discuss appellant's contention that certain acts of appellees and others depressed or chilled the public bidding. However, we observe that a review of the record indicates that appellant failed to prove that anyone who wished to qualify for bidding was prevented from doing so or that the bidding by others was "chilled" or "stifled." We find no merit in any of appellant's contentions.

Affirmed.

We agree: HARRIS, C.J., and BYRD and PURTLE, JJ.